MARY-LEE KIMBER SMITH (CA BAR NO. 239086) (msmith@dralegal.org)
CHRISTINE CHUANG (CA BAR NO. 257214) (cchuang@dralegal.org)
Disability Rights Advocates
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
Telephone: (510) 665-8644
Facsimile: (510) 665-8511
TTY: (510) 665-8716

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

CALIFORNIA FOUNDATION FOR INDEPENDENT LIVING CENTERS, on behalf of itself and others similarly situated, and RUTHEE GOLDKORN, on behalf of herself and others similarly situated,

Plaintiffs,

v.

COUNTY OF SACRAMENTO,

Defendant.

**Case No. 2:12-CV-03056-KJM-CKD**

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: May 22, 2015
Time: 10:00 a.m.
Place: Courtroom 3
Judge: Hon. Kimberly J. Mueller

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

PLEASE TAKE NOTICE THAT ON MAY 22, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard, Plaintiffs will move, and hereby do move, the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure and Civil Local Rules 230 and 260 for an order granting judgment as a matter of law to Plaintiffs that Defendant violates the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, California Civil Code Section 54, *et seq.*, California Civil Code Section 51, *et seq.* and California Government Code Section 11135, (1) by constructing and operating gate counters in the newly constructed Terminal B of Sacramento International Airport that violate federal and state accessibility standards and (2) by failing to provide meaningful access for individuals with mobility disabilities to the emergency evacuation plans for the Sacramento International Airport. 42 U.S.C. § 12132, 29 U.S.C. § 794, Cal. Civ. Code § 51, *et seq.*, Cal. Civ. Code § 54, *et seq.*, Cal. Gov. Code § 11135.

This motion is brought on the grounds that (1) federal and state laws require that the County of Sacramento comply with accessibility standards for the gate counters in Terminal B, but Defendant fails to do so, and (2) federal and state laws require that the County of Sacramento provide meaningful access to its emergency evacuation planning for individuals mobility with disabilities, but Defendant fails to do so. Plaintiffs seek partial summary judgment on the issue of Defendant's liability only as to gate counter accessibility and meaningful access to emergency evacuation, and not on the appropriate remedy for any legal violation. This Motion is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities; the accompanying declarations, and all exhibits thereto; and on such further written and oral argument as may be submitted in the Reply in support of this Motion and presented at the hearing or before the time the Court takes this Motion under submission.

Meet and confer efforts have been exhausted. Counsel for parties met and conferred on March 18, 2015 and discussed the parties' respective positions regarding the accessibility of the gate counters and the legal sufficiency of the emergency evacuation planning for people with mobility disabilities. The parties also resolved all procedural issues during the meet and confer.

DATED: April 17, 2015

Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

/s/

Mary-Lee Kimber Smith
Attorneys for Plaintiffs

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# TABLE OF CONTENTS

## CONTENTS

I. Introduction ........ 1

II. Statement of Facts ........ 2

A. The Newly-Constructed Gate Counters in Terminal B Do Not Comply with Accessibility Standards for People with Mobility Disabilities. ........ 2

B. The County's Emergency Evacuation Plans for Terminal B Fail to Address the Unique Needs of People with Mobility Disabilities. ........ 3

1. The County Has Written Evacuation Plans for Terminal B for the General Public but These Plans Do Not Accommodate People with Mobility Disabilities. ........ 3

2. The County's Evacuation Plans Include Three Key Components for the General Public That Are Not Offered to People with Mobility Disabilities. ........ 4

a. The County's Policies and Procedures for Actual Evacuation Leave Behind People with Mobility Disabilities. ........ 4

b. The County's Policies and Procedures for Communications Regarding Evacuation Ignore People with Mobility Disabilities. ........ 6

c. The County's Policies and Procedures for Recovery after Evacuation Exclude People with Mobility Disabilities. ........ 7

3. The County Relies on Ad Hoc Accommodations to Address the Unique Needs of People with Mobility Disabilities. ........ 8

C. The Plaintiffs and County Are Covered Under Plaintiffs' Legal Claims. ........ 8

III. Legal Standard ........ 9

IV. Argument ........ 9

A. There Is No Genuine Issue of Material Fact as to Each Prima Facie Element of Plaintiffs' Title II and Section 504 Claims. ........ 9

1. Plaintiffs Are or Represent Qualified Individuals with Disabilities. ........ 10

2. Plaintiffs Have Been Denied the Benefits of and Have Been Excluded from a Public Entity's Programs, Services, and Activities. ........ 10

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

a. The Prohibition Against Discrimination in Title II and Section 504 Applies to the County of Sacramento. 10

b. Architectural Barriers Are a Form of Prohibited Discrimination. 11

c. It Is Undisputed that the County Has Failed to Design and Construct Gate Counters in Compliance With ADAAG. 11

d. Failing to Provide Meaningful Access to Emergency Evacuation Plans Is a Form of Prohibited Discrimination. 13

(1) The County's Emergency Evacuation Plans Cannot Disproportionately Burden People with Mobility Disabilities Due to Their Unique Needs. 13

(2) It Is Undisputed that the County's Emergency Evacuation Plans Disproportionately Burden People with Mobility Disabilities. 14

(3) The County's Emergency Evacuation Plans Must Provide Reasonable Accommodations for People with Mobility Disabilities. 15

(4) There Is No Factual Dispute that the County Fails to Provide Reasonable Accommodations in its Emergency Evacuation Plans. 16

3. Plaintiffs Have Demonstrated that the Denial of Benefits and Exclusion from Services Occurred by Reason of Their Disability. 16

B. There Is No Genuine Issue of Material Fact As to Each Element of Plaintiffs' Claims Under California Law. 17

1. The County Violates the California Disabled Persons Act ("DPA") by Failing to Provide Full and Equal Access to Terminal B. 17

2. The County Violates the Unruh Act by Failing to Provide Full and Equal Access to Terminal B. 18

3. The County Violates California Government Code Section 11135 by Failing to Provide Full and Equal Access to Terminal B. 19

C. The Court Need Not Determine the Remedy at This Stage. 20

V. Conclusion 20

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

## TABLE OF AUTHORITIES

**Cases**

*American Council of the Blind v. Paulson*
525 F.3d 1256 (D.C. Cir. 2008) .......... 16

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) .......... 9

*Barden v. City of Sacramento*
292 F.3d 1073 (9th Cir. 2002) .......... 10, 11

*Bonner v. Ariz. Dept. of Corr.*
714 F. Supp. 420 (D. Ariz. 1989) .......... 10

*Brooklyn Ctr. for Indep. of the Disabled v. City of New York*
980 F. Supp. 2d 588 (S.D.N.Y. 2013) .......... 13, 15, 16, 20

*Burks v. Poppy Constr. Co.*
57 Cal.2d 463 (1962) .......... 19

*California Council of the Blind v. County of Alameda*
985 F.Supp.2d 1229 (N.D. Cal. 2013) .......... 16

*Castaneda v. Burger King Corp.*
264 F.R.D. 557 (N.D. Cal. 2009) .......... 18, 19

*Chapman v. Pier 1 Imp. (U.S.) Inc.*
631 F.3d 939 (9th Cir. 2011) .......... 17

*Chapman v. Pier 1 Imp. (U.S.) Inc.*
870 F. Supp. 2d 995 (E.D. Cal. 2012) .......... 9

*Cmtys. Actively Living Indep. and Free v. City and Cnty. of Los Angeles*
2011 WL 4595993 (C.D. Cal. February 10, 2011) .......... 13, 14, 16, 20

*Crowder v. Kitagawa*
81 F.3d 1480 (9th Cir. 1996) .......... 13, 14

*D.K. ex rel. G.M. v. Solano County Office of Educ.*
667 F. Supp. 2d 1184 (E.D. Cal. 2009) .......... 19

*Dare v. California*
191 F.3d 1167 (9th Cir. 1999) .......... 13

*Daubert v. Lindsay Unified Sch. Dist.*
760 F.3d 982 (9th Cir. 2014) .......... 11

*Fortyune v. City of Lomita*
766 F.3d 1098 (9th Cir. 2014) .......... 10

*Grimmway Enter., Inc. v. PIC Fresh Global, Inc.*
548 F. Supp. 2d 840 (E.D. Cal. 2008) ........ 9

*Hankins v. El Torito Restaurants, Inc.*
63 Cal. App. 4th 510 (1998) ........ 18

*Hubbard v. SoBreck*
554 F.3d 742 (9th Cir. 2009) ........ 17

*Isbister v. Boys' Club of Santa Cruz*
40 Cal.3d 72 (1985) ........ 19

*Lieber v. Macy's West, Inc.*
80 F. Supp. 2d 1065 (N.D. Cal. 1999) ........ 20

*Lovell v. Chandler*
303 F.3d 1039 (9th Cir. 2002) ........ 9, 17

*McGary v. City of Portland*
386 F.3d 1259 (9th Cir. 2004) ........ 15, 17

*Milliken v. Bradley*
433 U.S. 267 (1977) ........ 20

*Moeller v. Taco Bell Corp.*
816 F. Supp. 2d 831 (N.D. Cal. 2011) ........ 17, 18, 19

*Pierce v. Cnty. of Orange*
526 F.3d 1190 (9th Cir. 2008) ........ 10

*Rodde v. Bonta*
357 F.3d 988 (9th Cir. 2004) ........ 14

*Shirey ex rel. Kyger v. City of Alexandria Sch. Bd.*
229 F.3d 1143 (4th Cir. 2000) ........ 13

*Vinson v. Thomas*
288 F.3d 1145 (9th Cir. 2002) ........ 15

*Voiles v. Reavis*
2014 WL 5092664 (S.D. Cal. Mar 3, 2014) ........ 17

*Walsh v. Tehachapi Unified Sch. Dist.*
827 F.Supp.2d 1107 (E.D. Cal. 2011) ........ 19

*Weinreich v. L.A. Cnty. Metro. Transp. Auth.*
114 F.3d 976 (9th Cir. 1997) ........ 10, 17

*Zukle v. Regents of Univ. of Cal.*
166 F.3d 1041 (9th Cir.1999) ........ 10

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**Statutes**

29 U.S.C. § 705 .......... 10
29 U.S.C. § 794 .......... 10, 17
42 U.S.C. § 12102 .......... 10
42 U.S.C. § 12131 .......... 10
42 U.S.C. § 12132 .......... 17
Cal. Civ. Code § 51 .......... 19
Cal. Civ. Code § 51(f) .......... 19
Cal. Civ. Code § 54(c) .......... 17, 18
Cal. Civ. Code §§ 54-54.3 .......... 17
Cal. Gov. Code § 11135(a) .......... 19
Cal. Gov. Code § 11135(b) .......... 20

**Other Authorities**

NEW OXFORD AMERICAN DICTIONARY (Angus Stevenson et al. eds., 3rd ed. 2010) .......... 11

**Rules**

Fed. R. Civ. Proc. 56(a) .......... 9

**Regulations**

28 C.F.R. § 35.149 .......... 11
28 C.F.R. pt. 36, app. A (July 1, 1994) .......... 2
28 C.F.R. pt. 36, app. A § 2.2 (1994) .......... 12
28 C.F.R. pt. 36, app. A § 7.2 (1994) .......... 2, 11
28 C.F.R. pt. 36, app. A § 7.2(2) (1994) .......... 12
Cal. Code Reg. tit. 24 pt. 2 .......... 18
Cal. Code Reg. tit. 24 pt. 2 § 1122B.5 .......... 2, 18
Cal. Code Reg. tit. 24 pt. 2 §§ 1101B *et seq* .......... 2

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This motion for partial summary judgment addresses two issues: (1) access to gate counters in Terminal B of the Sacramento International Airport (the "Airport") and (2) emergency evacuation planning in the Airport.[1] These issues especially impact people with mobility disabilities and, in so doing, raise significant concerns and questions.

Gate counters are the hub for interactions and transactions between passengers and airline staff. Wheelchair users, who must conduct various transactions at gate counters, such as arranging special boarding procedures, have little choice but to utilize the gate counter to interact with airline staff. To conduct these transactions, wheelchair users must try to use the narrow shelf attached to the vertical face of a towering counter that is not only too high for them to use but that ultimately creates a wall between them and the airline staff. This gate counter, though, is not a pre-ADA relic; rather it is a chic, granite-top gate counter in a state-of-the-art newly-constructed airport terminal, which nonetheless fails to comply with federal and state law.

All passengers take for granted that airports – which are prone to a variety of emergencies – will have emergency evacuation plans to ensure passenger safety. This is particularly true for people with mobility disabilities who face greater and unique burdens during an evacuation because, for instance, they cannot use emergency stairwell exits. However, the Airport fails to plan ahead for this most vulnerable population. Instead, people with mobility disabilities must rely on ad hoc measures taken by others, including fellow passengers, for assistance, which courts have repeatedly found to be legally insufficient.

These two issues are ripe for summary judgment as there are only legal questions to be resolved by the Court. There is no dispute that the gate counters are too high for use by people in wheelchairs and that there is a shelf attached to the front of the gate counter. The question is whether the architectural layout of the gate counters complies with federal and state accessibility standards. There is no dispute that there is minimal emergency evacuation planning for people

[1] Plaintiffs have alleged numerous other architectural and policy barriers; however, these other barriers are being addressed through negotiation.

with mobility disabilities and a reliance on ad hoc responses. The question is whether such planning is legally sufficient to provide meaningful access to people with mobility disabilities.

Plaintiffs are entitled to partial summary judgment as to gate counters because a shelf is not a counter and thus, the gate counters violate federal and state accessibility standards, and as to emergency evacuation planning because ad hoc responses and plans for the general public do not constitute legally sufficient evacuation planning for people with mobility disabilities.

## II. STATEMENT OF FACTS

### A. The Newly-Constructed Gate Counters in Terminal B Do Not Comply with Accessibility Standards for People with Mobility Disabilities.

There is no dispute that Terminal B is a newly-constructed facility at the Airport and was officially opened for travel on October 6, 2011. Plaintiffs' Statement of Undisputed Facts [#1] [2] Construction of Terminal B began in 2008. [#2] Terminal B includes the "Terminal," where the ticketing counters are located, the "Concourse," where the departure gates are located, and the Automated People Mover (APM), which goes from the Terminal to the Concourse. [#3] There is no dispute that there are service counters in the Concourse located at each of the nineteen gates in Terminal B (hereafter "gate counters"). [#4] The County admits that these gate counters offer a variety of services and are used for a variety of transactions between passengers and staff. [#5] For instance, gate counters are where a passenger might show a passport, receive a gate check tag, show a boarding pass, ask for a seat upgrade, request information about flights or the airport, obtain priority boarding slips, or request being added to a wait-list. [#5]

The parties do not dispute that the applicable versions of federal and state architectural accessibility standards are the 1991 ADAAG (28 C.F.R. pt. 36, app. A (July 1, 1994)) and the 2007 version of the California Building Code (CBC), Title 24, Part 2 (Cal. Code Regs., tit. 24 pt. 2 §§ 1101B *et seq.*) ("Title 24"). [#6] As will be discussed, under ADAAG, a gate counter cannot be higher than 36 inches, and, under Title 24, a gate counter cannot be higher than 34 inches. 28 C.F.R. pt. 36, app. A § 7.2 (1994); Cal. Code Reg. tit. 24 pt. 2 § 1122B.5.

[2] Citations to Plaintiffs' Statement of Undisputed Facts, filed concurrently herewith, are hereafter designated by number corresponding to relevant undisputed fact.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

The parties rely on architectural plans for gate counter measurements,[3] which are not disputed. [#7] There is no dispute that the gate counter is 48 inches from floor to the top surface of the counter. [#8] There is no dispute that the width of the gate counter (from left to right) is 78.5 inches and that the depth of the counter (from front to back) is 14 inches. [#8] The County admits that there is an additional horizontal surface that juts from the vertical face of the gate counter. It is undisputed that this jutting surface is 30 inches in height (from floor to top surface), 78.5 inches in width (from left to right), and 6.75 inches in depth (from front to back). [#9] This jutting surface does not fold down to be flush with the face of the gate counter. [#10]

A person who uses a wheelchair or scooter is differently positioned than a nondisabled customer. [#12] When a person in a wheelchair faces the gate counter, she faces its front, which functions like a wall. [#12] It is undisputed that her line of sight is not comparable to an able-bodied person. [#12] In addition, she is not always visible to staff behind the high counter, and may have to go around the side to the rear working area of the gate counters to get the attention and service of customer service agents. [#13]

The County admits that for people in wheelchairs to use the gate counters, staff must make additional efforts. Specifically, in order for wheelchair users to utilize the gate counter, airline staff must reach over the gate counter to the jutting horizontal surface below and/or come around to the side of the gate counter to interact with people in wheelchairs. [#14] The County admits that there is not always room at the side of the gate counter to pass documents or other items to people in wheelchairs. For 10 of the gate counters, there is an obstruction – a boarding gate reader with a podium – attached to the side of the gate counter. [#15] At some gates, there is no side access for the middle service terminals of the gate counter. [#16]

**B. <u>The County's Emergency Evacuation Plans for Terminal B Fail to Address the Unique Needs of People with Mobility Disabilities.</u>**

1. <u>The County Has Written Evacuation Plans for Terminal B for the General Public but These Plans Do Not Accommodate People with Mobility Disabilities.</u>

There is no dispute that an evacuation plan is essential for the safety of all people in an

[3] Plaintiffs' expert found minor discrepancies between design measurements and actual constructed measurements. However, for this motion, Plaintiffs rely on undisputed architectural plan measurements.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

airport. [#17] Many types of emergencies may require an evacuation from the Airport. [#18] The County admits that an evacuation plan is necessary to anticipate the needs of the general public during an emergency and that a plan should be drafted prior to the need to evacuate. [#19, 20]

The County also admits that there are needs specific only to people with mobility disabilities during an airport evacuation. [#21] Despite this recognition, the County also admits that while the Airport has an evacuation plan, it does not include provisions specifically related to people with disabilities and each type of accessible need.[4] [#22] The County admits that "[t]he specific plan for evacuating people with mobility disabilities is the same as the specific plan for everyone else." [#23] The County does not dispute that there are references in only a "couple" of emergency plans related to people with disabilities "in general, but not specifically." [#24] Instead, the plan is that "everyone is going to be evacuated from the building if there's a need for that, and the firefighters . . . or the first responders will determine what the needs of all of those people are and how to get the people evacuated." [#25] In fact, the County's plans leave the details of how to evacuate people with mobility disabilities to first responders at the time of an emergency despite the fact that first responders do not have specific written plans dealing with people with mobility disabilities. [#25, 26, 27, 66, 68, 69, 70]

2. <u>The County's Evacuation Plans Include Three Key Components for the General Public That Are Not Offered to People with Mobility Disabilities.</u>

Plans relating to evacuation from the Airport involve several components: (1) actual evacuation (i.e. physically moving to a place of safety); (2) communications regarding evacuation; and (3) recovery after evacuation. [#28]

***a. The County's Policies and Procedures for Actual Evacuation Leave Behind People with Mobility Disabilities.***

In order to physically leave the building, able-bodied people have numerous exits. In the Terminal, the fourth floor has two emergency exits and the third floor has six emergency exits. [#29] On the Concourse, there is an emergency exit at each of the 19 gates. [#30] When

---

[4] Plaintiffs are not requesting a separate evacuation plan for people with mobility disabilities but rather that any evacuation plan that the Airport utilizes should contain provisions to address the needs of people with mobility disabilities.

evacuating the APM, passengers must walk along the guideway, a path between the two tracks for the APM. [#31]

Despite clear plans for the evacuation of the general public, the County has failed to adequately plan for the unique evacuation needs of people with mobility disabilities. It is undisputed that people with mobility disabilities may require assistance evacuating stairwells when elevators or escalators are not in service and when they must relocate to a place of safety. [#32] It is further undisputed that to evacuate using a stairwell, people with mobility disabilities will require an evacuation device, such as a stair chair. [#33] However, the Airport currently owns a total of only six stair chairs: one for the third floor of Terminal B where there are six emergency exits relying on stairwells, one for the fourth floor of Terminal B where there are two emergency exits relying on stairwells, and four for the Concourse where there are 19 emergency exits relying on stairwells. [#34] In addition, the County admits that there are no signs in Terminal B indicating where the stair chairs are located and a person with a disability would not know where to find these devices. [#35, 36] Furthermore, the County admits it has not planned in advance to ensure that it has an adequate number of stair chairs for people with mobility disabilities and has never conducted a survey of how many people in the Airport at a given time may require evacuation chairs. [#37] [5]

The parties agree that people with mobility disabilities have other unique needs beyond needing a stair chair to evacuate. [#39] These needs include having trained persons who can provide evacuation assistance and planning in advance for providing that assistance. [#40] None of the Airport's evacuation plans provide for these needs.

First, it is undisputed the County designates individuals who have no training to assist in evacuating people with mobility disabilities. The Airport's most detailed evacuation plan – the Terminal/Automated People Mover Evacuation Plan ("Evacuation Plan") – states that evacuation assistance for people with mobility disabilities will be provided, "if available," by a) friends or relatives, b) supervisors or co-workers, c) building staff, d) first responders. [#41] The County

[5] There are probably at least 50 to 100 wheelchairs provided by airlines for passengers in non-emergency situations, but only six stair chairs located in Terminal B. [#38]

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

admits, however, that it has not trained friends and relatives of disabled passengers how to assist in an evacuation, including use of a stair chair. [#42] The County also admits that twenty Airport managers have been trained on where the stair chairs are (not necessarily on how to use them) and the County does not know whether all operations staff has been trained with respect to evacuation for persons with mobility disabilities. [#43] Despite the lack of training in evacuation, the County expects that these untrained individuals will be responsible for evacuating people with mobility disabilities. The County admits, though, that without training, these untrained individuals could exacerbate a person's disability or disabilities by not carrying them properly. [#44] The County also admits there are no first responders who would specifically handle the evacuation of people with mobility disabilities and that first responders do not have specific plans for dealing with people with mobility disabilities. [#27, 45, 69, 70] When evacuating the APM, it is undisputed that wheelchair passengers are not allowed on the guideway without someone assisting them because the slope on the guideway is greater than the maximum slope allowed under the law. [#46] However, the County has not trained people who may provide such assistance. [#47]

Second, the County fails to plan in advance for the evacuation of people with mobility disabilities. The Evacuation Plan only contains vague references to people with disabilities, using the terms "to be considered" or "may include." [#48] This is, in essence, a plan to plan. Detailed procedures made in advance, and knowledge of such procedures, are necessary to meet the specific needs of people with mobility disabilities during an emergency, especially in light of the stress, rush, and chaos of an emergency that makes it difficult or even impossible to plan last-minute. [#49] Indeed, the County admits that ultimately people with mobility disabilities may have to rely on fellow untrained passengers to assist in evacuation. [#50]

***b. The County's Policies and Procedures for Communications Regarding Evacuation Ignore People with Mobility Disabilities.***

A public address system announcement is the primary way the public is notified of an evacuation of Terminal B. [#51] The Evacuation Plan has attachments containing pre-scripted emergency announcements, which are the only announcements that are made. [#52] Also,

signage throughout Terminal B indicates evacuation routes for the general public. [#57]

Emergency warnings must contain enough information for people with mobility disabilities to understand what they should do during an emergency, including if they should wait for a first responder to evacuate, where to wait for assistance, whether there are alternate, accessible evacuation routes where they can evacuate independently, and the location of evacuation devices. [#53] In addition, accessible evacuation routes should be well-marked by signs throughout the Airport. [#58]

It is undisputed, however, that the County does not provide evacuation instructions to people with mobility disabilities before or during an evacuation. [#55] The pre-scripted announcements set forth in the Evacuation Plan do not contain specific information for people with mobility disabilities. [#54] The County does not provide people with mobility disabilities with information regarding who may be available to assist them in an evacuation. [#56] Terminal B also lacks signage with specific instructions for people with mobility disabilities to evacuate, such as accessible evacuation routes, where stair chairs are located, where people with mobility disabilities should go, and who will provide assistance to them. [#59]

***c. The County's Policies and Procedures for Recovery after Evacuation Exclude People with Mobility Disabilities.***

The Airport's evacuation plans include provisions for recovery after an evacuation. The Evacuation Plan details procedures to be taken for the general public to reenter the building, including providing appropriate security and screening and for Airport operations staff to relocate the public to areas that are "comfortable" and "convenient to resuming normal operations." [#60] However, the County admits that there is no specific plan as to recovery or returning to Terminal B for people with mobility disabilities after an evacuation. [#63] In the recovery period, people with mobility disabilities will need to be reunited with their durable medical equipment, such as wheelchairs or mobility aids if they were evacuated without such equipment. [#61] Moreover, if it is necessary to transport people to a safe area after evacuation, people with mobility disabilities will require accessible vehicles and information regarding accessible pick-up points. [#62] However, the County does not have any written plans for

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

reuniting people with mobility disabilities with their wheelchairs or mobility aids after an evacuation or for addressing the needs of such persons during recovery efforts. [#63, 64]

3. The County Relies on Ad Hoc Accommodations to Address the Unique Needs of People with Mobility Disabilities.

Instead of specific written provisions drafted in advance relating to the unique needs of people with mobility disabilities during evacuations, the County relies on ad hoc accommodations at the time of an emergency to assist people with mobility disabilities. [#26, 27, 65, 66] The County admits that during an evacuation, people with mobility disabilities may need to wait for firefighters or law enforcement to arrive. [#67] Those with special needs are "assessed by the firefighting or law enforcement personnel to determine how best to evacuate the building" when first responders come to the site. [#68] The County admits, however, that there are no first responders who would specifically handle the evacuation of people with mobility disabilities. [#45] Moreover, the Airport's firefighting unit does not have specific plans for dealing with people with mobility disabilities. [#69] The County is also not aware if the Sheriff's Department has any plans that address the needs of people with disabilities or if training is provided to the Sheriff's Department relating to the needs of people with disabilities. [#70] The County further relies on fellow passengers, friends, relatives, and airport staff to evacuate people with mobility disabilities, but admits that it does not provide training to these individuals. [#41, 42, 43, 47, 50]

**C. The Plaintiffs and County Are Covered Under Plaintiffs' Legal Claims.**

The County does not dispute that Plaintiff Goldkorn is an individual with a mobility disability who uses a wheelchair. [#71] Nor does the County dispute that organizational plaintiff CFILC is a statewide nonprofit association made up of independent living centers that employ and serve people with disabilities. [#72] Ms. Goldkorn and many members of the organizations represented by CFILC are substantially limited in the major life activity of walking and require mobility aids such as wheelchairs, scooters, and walkers. [#73] Ms. Goldkorn often travels to Sacramento for business, and flies into and out of Terminal B. [#74] CFILC and its member organizations routinely make use of the Airport. [#75]

Defendant Sacramento County is the entity that owns and operates the Sacramento

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

County Airport System, which oversees Sacramento International Airport. [#76] The County admits that it is a public entity covered by Title II of the ADA. [#77] It also admits that Terminal B is a place of public accommodation. [#79] There is no dispute that the County received federal financial assistance from the Department of Transportation for its airports program and projects related to Terminal B. [#80] There is no dispute that the County received state financial assistance for its Sacramento County Airport System airports program, including a grant in 2008-2009 for the Sacramento International Airport Land Use Compatibility Plan. [#81]

## III. LEGAL STANDARD

A party may move for partial summary judgment on a claim or defense, or a part of a claim or defense. Fed. R. Civ. Proc. 56(a). The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.* The moving party bears the burden of informing the court of the basis for its motion and citing to particular parts of the record, and must demonstrate that there is no genuine dispute of fact. *Chapman v. Pier 1 Imp. (U.S.) Inc.*, 870 F. Supp. 2d 995, 1000-1001 (E.D. Cal. 2012); *see also Grimmway Enter., Inc. v. PIC Fresh Global, Inc.*, 548 F. Supp. 2d 840, 845 (E.D. Cal. 2008). If the moving party meets this burden, then the non-moving party has the burden to establish that there is a genuine issue of material fact, putting forth specific facts to show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The non-moving party may not simply rest upon allegations or denials and must come forward with more than "the mere existence of a scintilla of evidence." *Id.* at 255.

## IV. ARGUMENT

### A. <u>There Is No Genuine Issue of Material Fact as to Each Prima Facie Element of Plaintiffs' Title II and Section 504 Claims.</u>

A plaintiff who brings suit under Title II must show: "(1) she is a qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of her disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Under Section 504 of the Rehabilitation Act, a plaintiff must show: (1) he is an

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

"individual with a disability"; (2) he is "otherwise qualified" to receive the benefit; (3) he was denied the benefits of the program *solely by reason of his disability;* and (4) the program receives federal financial assistance. *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). Courts analyze violations of Title II and Section 504 concurrently using the same analysis. *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n. 11 (9th Cir.1999); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1216 at n. 27 (9th Cir. 2008).

1. Plaintiffs Are or Represent Qualified Individuals with Disabilities.

Ms. Goldkorn and many members of the organizations represented by CFILC are substantially limited in the major life activity of walking and require mobility aids such as wheelchairs, scooters, and walkers. [#71, 72, 73] They are therefore disabled under Title II and Section 504. *See* 42 U.S.C. § 12102; 29 U.S.C. § 705. Plaintiffs are qualified individuals with disabilities, as they regularly use or attempt to use the programs, services, and activities in Terminal B. [#74, 75] Thus, they are "qualified" for the receipt of services or participation in programs or activities provided by the County. 42 U.S.C. § 12131; 29 U.S.C. § 794.

2. Plaintiffs Have Been Denied the Benefits of and Have Been Excluded from a Public Entity's Programs, Services, and Activities.

***a. The Prohibition Against Discrimination in Title II and Section 504 Applies to the County of Sacramento.***

The County is a public entity under the ADA. [#77] Moreover, if a governmental entity receives federal funding for any of its specific services, all of its services are subject to the Rehabilitation Act. *See Bonner v. Ariz. Dept. of Corr.*, 714 F. Supp. 420 (D. Ariz. 1989). The County receives federal financial assistance for the Airport, including Terminal B. [#80] Thus, it is covered by Section 504. In addition, courts interpret "services, programs, or activities" broadly, "bringing within its scope anything a public entity does." *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (public sidewalks); *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101-02 (9th Cir. 2014) (street parking) (ADA's broad reach similar to Section 504). The ownership and operation, including design and construction, of Terminal B is something that the County "does." As such, providing accessible gate counters and evacuation plans for people with mobility disabilities in Terminal B is within the scope of Title II and Section 504.

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

***b. Architectural Barriers Are a Form of Prohibited Discrimination.***

It is well-established that "[a]n individual is excluded from participation in or denied the benefits of a public program if 'a public entity's facilities are inaccessible to or unusable by individuals with disabilities.'" *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 985-86 (9th Cir. 2014) (quoting 28 C.F.R. § 35.149); *see also Barden*, 292 F.3d at 1075; 28 C.F.R. § 35.149. Under Title II and Section 504 regulations, newly-constructed facilities must conform to federal architectural standards to be deemed "readily accessible," and thereby nondiscriminatory. Here, the County admits that it has chosen to follow the 1991 Americans with Disabilities Accessibility Guidelines (ADAAG). [#6] Thus, if Terminal B does not meet ADAAG, it is by definition inaccessible and excludes disabled individuals, a form of prohibited discrimination.

***c. It Is Undisputed that the County Has Failed to Design and Construct Gate Counters in Compliance With ADAAG.***

Under ADAAG, service and information counters that do not have a cash register must have either a portion of the main counter that is a minimum of 36 inches in length with a maximum height of 36 inches above the floor, or an auxiliary counter with a maximum height of 36 inches in close proximity, or offer "equivalent facilitation," such as a folding shelf on which a person with disabilities can write and space on the side for transactions to occur. 28 C.F.R. pt. 36, app. A § 7.2 (1994). The gate counters in Terminal B do not comply with the ADAAG because they do not (1) have a lowered portion of the counter, (2) have lowered auxiliary counters in close proximity, or (3) offer equivalent facilitation.

First, the gate counters do not have a lowered portion of the counter. The gate counters are 48 inches high, with a 14 inch deep counter surface. [#8] The counters have a 6.75 inch deep lowered shelf, protruding from the vertical face of the gate counter. [#9] The narrow shelf along the face of the gate counter is not a "portion" of a counter. A portion is "a part of a whole; an amount, section, or piece of something," and a counter is "a long flat-topped fixture in a store or bank across which business is conducted with customers." NEW OXFORD AMERICAN DICTIONARY (Angus Stevenson et al. eds., 3rd ed. 2010). The shelf is not a part of or a section of the flat-topped fixture, it is a completely separate flat-topped fixture attached to the vertical face of the

gate counter at a lower level. It does not allow for business to be conducted in the same way as for able-bodied people since (1) business cannot happen "across" the lowered shelf because there is a wall facing a person in a wheelchair and (2) the shelf is not wide enough to function as a counter does since it is less than half the size of the gate counter. [#8, 9, 12, 13, 14] Photographs of compliant lowered counters are attached as Exhibit E to Mr. Margen's declaration.

Second, there is no lowered auxiliary counter in close proximity to the gate counter. A lowered auxiliary counter could include a separate lowered counter to the side of the gate counter that would allow for interactions between staff and wheelchair users across a separate counter without the barrier of a wall. A photograph of a compliant auxiliary counter is attached as Exhibit F to Mr. Margen's declaration.

Finally, the shelf does not constitute "equivalent facilitation" under ADAAG. Equivalent facilitation allows "[d]epartures from particular technical and scoping requirements…where the alternative designs and technologies used will provide substantially equivalent or greater access to and usability of the facility." 28 C.F.R. pt. 36, app. A § 2.2 (1994). In the context of service counters, "equivalent facilitation might consist of: (1) provision of a folding shelf attached to the main counter on which an individual with disabilities can write, and (2) use of the space on the side of the counter or at the concierge desk, for handing materials back and forth." 28 C.F.R. pt. 36, app. A § 7.2(2) (1994). Here, the gate counters offer neither. The gate counters do not have a folding shelf attached to the main counter. [#10] Moreover, the shelf is only 6.75 inches deep, not even big enough for letter size paper, and thus not usable as a writing surface. [#9] The space beside the counters is inconsistently provided and gives wheelchair users a lesser degree of service. Some gate counters have boarding gate readers attached to the side of the counter. [#15] Others have middle terminals without space on the side. [#16] Moreover, it is not equivalent facilitation to address newly-constructed architectural barriers with changes in policies as opposed to design (e.g., having an employee come around to the front of the gate counter).

The County offers a post-hoc explanation for how the gate counters comply with ADAAG. First, the County argues the shelf is a counter intended for people with mobility disabilities. There is absolutely no evidence that the shelf was intended to be used by people with

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

mobility disabilities. Indeed it may be better suited to provide a place for the personal effects (e.g., purses, briefcases) of able-bodied persons. [#11] Second, even if the shelf was intended for people with mobility disabilities, there is no evidence that the gate counter shelf was ever designed to provide equivalent facilitation. The standards for equivalent facilitation are clear (e.g., folding shelf, space at the side) but the gate counter shelves do not meet these standards.

***d. Failing to Provide Meaningful Access to Emergency Evacuation Plans Is a Form of Prohibited Discrimination.***

Under ADA and Section 504, courts determine whether a public entity has discriminated against people with disabilities by denying them "meaningful access" to its services, programs or activities. *See Dare v. California*, 191 F.3d 1167, 1171-72 (9th Cir. 1999). There is a denial of meaningful access when (1) people with disabilities are disproportionately burdened due to their unique needs or (2) a public entity fails to provide reasonable accommodations for disabled people. *Crowder v. Kitagawa*, 81 F.3d 1480, 1484-85 (9th Cir. 1996). It is well-established that a public entity is required under the ADA to ensure meaningful access to its emergency preparedness program for people with disabilities. *See Cmtys. Actively Living Indep. and Free v. City and Cnty. of Los Angeles*, 2011 WL 4595993, *12-*13 (C.D. Cal. February 10, 2011) [hereafter "*CALIF*"]; *Brooklyn Ctr. for Indep. of the Disabled v. City of New York*, 980 F. Supp. 2d 588, 640-41 (S.D.N.Y. 2013) [hereafter "*BCID*"]. Advance planning for evacuation is one of the essential components of emergency planning. *See CALIF*, 2011 WL 4595993 at *1; *BCID*, 980 F.Supp.2d at 643-44; *Shirey ex rel. Kyger v. City of Alexandria Sch. Bd.*, 229 F.3d 1143 (4th Cir. 2000) (lack of emergency plan for evacuation of people with disabilities violates ADA).

In *BCID*, the court found the City of New York liable because, among other things, it had no plan to evacuate people with disabilities. *BCID*, 980 F. Supp. 2d at 643-44. The court rejected the City's argument that evacuation of persons with disabilities could be achieved "on a case-by-case basis." *Id.* The *BCID* court also found that the City had failed to provide sufficient information to people with disabilities in its communications during emergencies. *Id.* at 656.

**(1) The County's Emergency Evacuation Plans Cannot Disproportionately Burden People with Mobility Disabilities Due to Their Unique Needs.**

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
(510) 665-8644

The County's failure to plan for the unique needs of people with mobility disabilities in its Airport evacuation plans disproportionately burden people with mobility disabilities. Governmental action that "disproportionately burdens people with disabilities because of their unique needs [is] actionable under the ADA." *Rodde v. Bonta*, 357 F.3d 988 (9th Cir. 2004); *see also Crowder*, 81 F.3d at 1484. This analysis has been used in the context of emergency preparedness where the *CALIF* court held that "[b]ecause people with disabilities require special needs, the City disproportionality burdens them through its facially neutral practice of administrating its [emergency preparedness] program in a matter that fails to address such needs." *CALIF*, 2011 WL 4595993 at *14.

**(2) It Is Undisputed that the County's Emergency Evacuation Plans Disproportionately Burden People with Mobility Disabilities.**

There is no factual dispute that the County provides an Airport evacuation plan for the general public along with personnel and training to ensure that it is effective, but fails to provide such planning for people with mobility disabilities despite recognizing their unique needs. There is no factual dispute that the County has evacuation plans for the general public. [#22] However, the County has no specific plans to evacuate people with mobility disabilities. [#22, 23, 24, 25] Specifically, there is no advance planning to address their unique needs and no training provided to those designated to assist people with mobility disabilities. [#37, 42, 43, 47, 50, 65] Instead, the County delegates responsibility for evacuation of people with mobility disabilities to first responders at the time of an emergency, who do not have plans for addressing the needs of people with disabilities. [#25, 26, 27, 66, 68, 69, 70] The County also delegates evacuation assistance responsibilities to friends and relatives who are not trained to evacuate people with disabilities. [#41, 42] This approach disproportionately burdens people with mobility disabilities because, without sufficient planning, they may be unable to evacuate from Terminal B.

There is no factual dispute that the County has plans for providing communications regarding evacuations to the general public. [#51, 52, 57] It is also undisputed that the County does not provide specific information regarding accessible routes of travel and availability of evacuation assistance to people with mobility disabilities either before or during evacuations.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

[#54, 55, 56, 59] Such communications are legally required. *See BCID*, 980 F.Supp.2d at 656. This lack of communication also disproportionately burdens people with mobility disabilities because they may not know how best to evacuate without sufficient instruction.

There is no factual dispute that the County has recovery plans for reentry to the building and relocation of the general public after an evacuation. [#60] There is also no dispute that the County does not have a plan for recovery for people with mobility disabilities, such as written plans to address the needs of people who have been evacuated without their mobility aids. [#63, 64] This disproportionately impacts people with mobility disabilities who may be left without their aids that provide them with mobility and independence after an emergency.

In sum, the facts are undisputed that the County has failed to address the unique needs of people with mobility disabilities in evacuation planning and thus denied people with mobility disabilities meaningful access to its evacuation plans in violation of the ADA and Section 504.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**(3) The County's Emergency Evacuation Plans Must Provide Reasonable Accommodations for People with Mobility Disabilities.**

Even if the Court finds no disproportionate burden, the County discriminates against people with mobility disabilities by failing make reasonable accommodations. Under the ADA and Section 504, the failure to provide reasonable accommodations is a form of discrimination. *McGary v. City of Portland*, 386 F.3d 1259, 1267 (9th Cir. 2004) (ADA); *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) (Section 504). In *McGary*, the Ninth Circuit held that "[a] plaintiff need not allege either disparate treatment or disparate impact in order to state a reasonable accommodation claim." *McGary*, 386 F.3d at 1266. Under *McGary*, Plaintiffs need only demonstrate that the County failed in its obligation to take any affirmative actions with respect to the evacuation needs of people with mobility disabilities.

The ADA and Section 504 do not require "optimal" accommodations, but require the County make "reasonable accommodations" to enable "meaningful access" to its emergency evacuation services. *BCID*, 980 F.Supp.2d at 640-41. Ad hoc accommodations to evacuate people with disabilities on a case-by-case basis "are both legally inadequate and practically unrealistic." *Id.* at 643-44 (citing *CALIF*). "[T]he purpose of the City's emergency preparedness

program is to *anticipate* the needs of its residents in the event of an emergency and to *minimize* the very type of last-minute, individualized requests for assistance . . . particularly when the City's infrastructure may be substantially compromised or strained by an imminent or ongoing emergency or disaster." *CALIF*, 2011 WL 4595993 at *15 (emphasis in original).

**(4) There Is No Factual Dispute that the County Fails to Provide Reasonable Accommodations in its Emergency Evacuation Plans.**

It is undisputed that the County has failed to take any advance affirmative actions with respect to people with mobility disabilities in its evacuation plans. Indeed, the County admits that the plan to evacuate people with mobility disabilities is the same as the plan for the general public. [#22, 23, 24, 65] The County's evacuation plans instead rely on ad hoc accommodations to evacuate people with mobility disabilities. [#25, 26, 66, 68]

There is no dispute that when an evacuation is occurring, people with mobility disabilities may need to wait for first responders to arrive. [#67] There is no dispute that only when first responders arrive on site do they determine how to best evacuate people with mobility disabilities. [#26, 68] The County admits that there are no first responders who would specifically handle the evacuation of people with mobility disabilities and first responders do not have specific plans related to the needs of people with mobility disabilities. [#27, 45, 69, 70]

The County also admits that it may rely on untrained passengers to help evacuate people with mobility disabilities. [#50] This is not legally sufficient planning or a reasonable accommodation. The County's reliance on other passengers puts the burden on people with mobility disabilities to find potential evacuation partners during emergencies – people who may not be willing to assist as they are trying to evacuate themselves.[6]

3. <u>Plaintiffs Have Demonstrated that the Denial of Benefits and Exclusion from Services Occurred by Reason of Their Disability.</u>

[6] The County's plan is akin to requiring people with disabilities to make a personal preparedness plan or rely on the kindness of the strangers to have meaningful access to a public entity's programs or services – arguments that have both been rejected by the courts. *See CALIF*, 2011 WL 4595993 at *15; *BCID*, 980 F.Supp.2d at 659; *American Council of the Blind v. Paulson*, 525 F.3d 1256, 1269-70 (D.C. Cir. 2008) (requiring blind and visually impaired individuals to rely on the kindness of strangers to identify currency denominations violates Section 504); *California Council of the Blind v. County of Alameda*, 985 F.Supp.2d 1229, 1239 (N.D. Cal. 2013) (rejecting defendants' argument that blind and visually impaired voters could vote successfully with the assistance of a third party).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

The ADA and Section 504 prohibit discrimination on the basis of disability. *Lovell*, 303 F.3d at 1052; 42 U.S.C. § 12132; 29 U.S.C. § 794. When there is a violation of an accessibility standard, there is a denial of benefits on the basis of disability. *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011); *Chapman v. Pier 1 Imp. (U.S.) Inc.*, 631 F.3d 939, 945, 947 (9th Cir. 2011). If not for their mobility disabilities, Plaintiffs would be able to conduct transactions and services at the gate counters. However, Plaintiffs cannot conduct transactions and services across high gate counters, solely because they use wheelchairs for mobility. Similarly, the disproportionate burden that the County places on people with mobility disabilities in its evacuation plans is by reason of their disability. People with mobility disabilities have unique needs due solely to their disability. If Plaintiffs were not disabled, the barriers they encountered would not have rendered the evacuation plans inaccessible to them. *Voiles v. Reavis*, 2014 WL 5092664, *15 (S.D. Cal. Mar 3, 2014). Additionally, Plaintiffs are seeking a reasonable modification to the County's evacuation plans, which they require solely because of their disability, and which the County has failed to provide. *See McGary*, 386 F.3d at 1267 (seeking more time to comply with ordinance due to disability); *cf. Weinreich*, 114 F.3d at 979 (seeking exemption from recertification requirement due to financial burden not disability).

### B. There Is No Genuine Issue of Material Fact As to Each Element of Plaintiffs' Claims Under California Law.

#### 1. The County Violates the California Disabled Persons Act ("DPA") by Failing to Provide Full and Equal Access to Terminal B.

The DPA provides that "individuals with disabilities or medical conditions have the same right as the general public to the full and free use of . . . public buildings, public facilities, and other public places." Cal. Civ. Code §§ 54-54.3. The County violates the DPA by failing to provide accessible gate counters in violation of the ADA. *See* Cal. Civ. Code § 54(c); *see also Hubbard v. SoBreck*, 554 F.3d 742, 745 (9th Cir. 2009) (violation of ADA is per se violation of the DPA). Because the County fails to provide accessible gate counters in Terminal B in violation of ADAAG, it has violated the DPA.

However, even if the County has not violated the ADA, the accessibility standards under Title 24 of California Building Code, which sets the standards for accessible buildings and

facilities in California, are stricter. Cal. Code Reg. tit. 24 pt. 2. Failure to comply with Title 24 is a violation of the DPA. *Moeller*, 816 F. Supp. 2d at 848; *Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 561 (N.D. Cal. 2009); *see also* Cal. Code Reg. tit. 24 pt. 2.

Under Title 24, sales, service, and information counters must have a portion of the main counter that is at least 36 inches in length with a maximum height of 34 inches above the floor. Cal. Code Reg. tit. 24 pt. 2 § 1122B.5. The gate counters do not comply with Title 24 because the counters are 48 inches in height [#8] and do not have a "portion of the main counter" that is 34 inches high. *See* Section IV.A.2(c). Instead, there is a narrow, 6.75 inch deep, shelf that juts from the face of the gate counter wall. [#9] Moreover, there is no equivalent facilitation exception under Title 24. Any equivalent facilitation under California law is only allowed for *existing* facilities and *not* for newly-constructed facilities like Terminal B. Cal. Code Reg. tit. 24 pt. 2 § 1122B.5. This more stringent standard under state law takes precedence over any federal accessibility standard. *Castaneda*, 264 F.R.D. at 561 (California state law's more stringent accessibility standard governs through applicable state laws). Thus, even if the gate counters offered equivalent facilitation under ADAAG – i.e. a folding shelf and space at the side – such features are not sufficient to comply with Title 24.

Moreover, the County's evacuation plans violate the DPA because the plans violate the ADA. *See* Cal. Civ. Code § 54(c). Alternatively, even if the County has not violated the ADA, the County has violated the DPA, which requires full and free use of public buildings, public facilities, and other public places. Here, the County has, at the very least, denied full and free use of the Airport building by providing only emergency exits relying on stairwells that are inaccessible to people with mobility disabilities without accommodations.[7] [#32-38]

2. The County Violates the Unruh Act by Failing to Provide Full and Equal Access to Terminal B.

The Unruh Act guarantees that "all persons within the jurisdiction of this state are free and equal, and no matter what their…disability…are entitled to the full and equal

[7] Some courts have extended the DPA analysis beyond architectural barriers to include programs, in which case the entire emergency evacuation program would be covered by the DPA. *See Hankins v. El Torito Restaurants, Inc.***,** 63 Cal. App. 4th 510, 523 (1998).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51. The phrase "business establishments" is interpreted in the "broadest sense reasonably possible." *Burks v. Poppy Constr. Co.*, 57 Cal.2d 463, 468-69 (1962). Noncommercial places of public accommodation are business establishments under the Unruh Act. *Isbister v. Boys' Club of Santa Cruz*, 40 Cal.3d 72, 79, 82-83 (1985); *see also Walsh v. Tehachapi Unified Sch. Dist.*, 827 F.Supp.2d 1107, 1123 (E.D. Cal. 2011) (public schools are business establishments under Unruh). The Airport is a public accommodation. [#79] Thus, Terminal B is covered under the Unruh Act.

The County violates the Unruh Act by failing to provide accessible gate counters in violation of the ADA. *See* Cal. Civ. Code § 51(f); *see also Moeller*, 816 F. Supp. at 848 (violation of the ADA constitutes a violation of the Unruh Act). Even if there is no violation of the ADA, the County also violates the Unruh Act by failing to comply with the requirements of Title 24 in constructing the gate counters, as discussed above. *See Moeller*, 816 F. Supp. 2d at 848; *Castaneda*, 264 F.R.D. at 561. Moreover, the County's evacuation plans violate the Unruh Act because they violate the ADA. *See* Cal. Civ. Code § 51(f). Alternatively, even if the County has not violated the ADA, the standards under California law are stricter. *See* Cal. Civ. Code § 51 (requiring "full and equal" access). Because the County fails to plan for the unique needs of people with mobility disabilities in advance, its plans deny full and equal access.

3. <u>The County Violates California Government Code Section 11135 by Failing to Provide Full and Equal Access to Terminal B.</u>

Section 11135 forbids discrimination and denial of full and equal access on the basis of disability, under any program or activity that receives any financial assistance from the state. Cal. Gov. Code § 11135(a). "[Section] 11135 is identical to the Rehabilitation Act except that the entity must receive State financial assistance rather than Federal financial assistance." *D.K. ex rel. G.M. v. Solano County Office of Educ.*, 667 F. Supp. 2d 1184, 1191 (E.D. Cal. 2009). Thus, if there is a violation of Section 504 and the entity receives state funding, then there is a violation of Section 11135. Section 11135 also incorporates the protections and prohibitions of the ADA and its implementing regulations; a violation of the ADA is a violation of Section 11135. Cal.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Gov. Code § 11135(b). The Sacramento County Airport System is a County program or activity that receives financial assistance from the state. [#81]

The County violates Section 11135 because the gate counters violate ADAAG as set forth under the ADA and Section 504. Even if there is no violation of ADAAG, the County independently violates Section 11135 because state-funded programs or activities must meet state standards if the state protections and prohibitions are stronger, and the gate counters violate the stricter requirements of Title 24. *See* Cal. Gov. Code § 11135(b).

In addition, the County's evacuation plans violate the ADA and Section 504 and thus violate Section 11135. *See* Cal. Gov. Code § 11135(b). The County's evacuation plans independently violate Section 11135 because there is not full and equal access to evacuation planning for people with mobility disabilities as discussed above.

### C. <u>The Court Need Not Determine the Remedy at This Stage.</u>

The Court need not determine the appropriate remedy at this stage. It is well within this Court's authority to grant Plaintiffs' motion solely as to the County's liability. *See, e.g.*, *Lieber v. Macy's West, Inc.*, 80 F. Supp. 2d 1065, 1081-82 (N.D. Cal. 1999) (defendant found liable for architectural barrier violations); *CALIF*, 2011 WL 4595993 at *17 (summary judgment granted as to liability); *BCID*, 980 F. Supp. 2d at 659-60 (trial limited to liability). Upon a determination of liability, the Court may then choose from a wide range of procedural devices and remedies to bring the case to a close. *Milliken v. Bradley*, 433 U.S. 267, 281 (1977).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for partial summary judgment as to the County's liability.

DATED: April 17, 2015

Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

/s/
Mary-Lee Kimber Smith
Attorneys for Plaintiffs

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
(510) 665-8644